# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-72V
UNPUBLISHED

| | |
|---|---|
| JANE MCGRAW,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: February 15, 2024<br><br>Special Processing Unit (SPU);<br>Entitlement to Compensation; Ruling<br>on the Record; Findings of Fact;<br>Influenza ("Flu"); Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA); |

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*Lauren Kells, U.S. Department of Justice, Washington, DC,* for Respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On January 5, 2021, Jane Hutton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on September 17, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to compensation, and award her **$37,500.00** in damages for actual pain and suffering.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I. **Relevant Procedural History**

Following the filing of the Petition, Respondent filed a Rule 4(c) Report on June 21, 2021, contesting compensation. Respondent's Rule 4(c) Report ("Report"), ECF No. 26. Respondent maintained that Petitioner could not meet the severity requirement of the Vaccine Act, nor could she establish onset of her injury occurred within forty-eight hours of vaccination, or that she ever experienced reduced range of motion. Report at 6-10.

Petitioner filed a motion for a ruling on the record on December 2, 2022, which also included briefing on appropriate damages. Motion for a Ruling on the Record ("Mot."), ECF No. 31. Respondent filed a response on January 4, 2023, reiterating the arguments set forth in the Rule 4(c) Report and setting forth his damages arguments. Respondent's Response to Petitioner's Motion for a Ruling on the Record ("Opp."), ECF No. 32. Petitioner filed a reply on January 11, 2023. Petitioner's Reply to Respondent's Response to Petitioner's Motion for a Ruling on the Record ("Reply"), ECF No. 33. The matter is ripe for resolution.

II. **Petitioner's Medical Records**

Petitioner received a flu vaccine in her left shoulder on September 17, 2019. Ex. 1 at 8. Thereafter, she had a mammogram on September 18th, and a gynecological exam on September 30th, with no record of shoulder pain. Ex. 3 at 26, 7-11.

Two months after vaccination, on November 14, 2019, Petitioner first complained of left shoulder pain to orthopedist doctor Travis Van Dyke. 22, 2018. Ex. 4 at 9-10. Dr. Van Dyke noted that Petitioner's shoulder pain had been present for two months "ever since she got the flu shot in her left shoulder…." *Id.* at 9. An examination showed a good range of motion, strength, with mild tenderness and positive impingement tests. *Id.* However, x-rays were unremarkable. *Id.* at 10. Petitioner was diagnosed with left shoulder pain and post-injection syndrome. *Id.*

Petitioner underwent an MRI on December 4, 2019, that showed tendinosis, impingement, and likely mild subdeltoid bursitis. Ex. 8 at 18-19. The history section of the record states "LEFT shoulder pain, limited range of motion, flu shot September 2019". *Id.* Later that month, on December 12, 2019, Petitioner returned to Dr. Van Dyke. Ex. 4 at 7-8. Her examination, diagnosis, and impression were unchanged from the previous visit. *Id.* at 7.

Petitioner began treating at Orlando Sports Chiropractic with Acupuncturist Charlene Wall for left shoulder pain on January 8, 2020. Ex. 5 at 6. She reported that she

2

had received a "flu shot" and "has since had pain in her L[eft] shoulder." *Id.* The notes also stated that she will recover in "6-12 months." *Id.* An examination showed "positive muscle inhibition" in her left shoulder, adhesion in some muscles, and pain on abduction. *Id.* Her pain was rated as seven out of ten, and described as constant since its onset. *Id.* She continued to treat throughout the winter of 2020, reporting some relief in February (rating her pain as five out of ten on February 5, 2020), and slow progress. *Id.* at 10-11. Her treatments consisted of acupuncture and Traumeel injections. *Id.* at 14-15. By February 25, 2020 (approximately five months post-vaccination), Petitioner reported that she experienced "a lot of pain" when raising or bringing her left arm across her chest. *Id.* at 13.

On October 1, 2020, Petitioner established care with internist Truc T. Tran, D.O. Ex. 10 at 21-23. Petitioner did not note any shoulder problems (chronic or otherwise) at that time, and reported that her exercise consisted of weight training, cardio, and yoga five to six days a week. *Id.* at 10. Petitioner now received her annual flu vaccine (in her right arm). *Id.* at 11.

Petitioner has submitted an affidavit in support of her claim. Ex. 11. She states therein that she had immediate pain following her vaccination, but delayed in seeking treatment based on the recommendation of her husband, and orthopedic surgeon. *Id.* Further, she stated that "[w]ith 202 shut down and COVID, I did not go back to Orlando Sports Chiropractic clinic or seek out other treatment", however the pain continued. *Id.* Additionally, Petitioner asserts that she mentioned to Dr. Tran that she was nervous to received a flu vaccine due to what happened in 2019. She ultimately received another vaccination, however in her right arm. *Id.*

Dr. Brian McGraw, Petitioner's husband, also submitted an affidavit. Ex. 12. Dr. McGraw stated that Petitioner sought treatment until the Covid-19 Pandemic forced her to stop. *Id.*

### III.   Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-

1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Severity Requirement

The first issue to be resolved is whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the flu vaccine on September 17, 2019, and she therefore must demonstrate by preponderant evidence that her residual symptoms continued at least through March 17, 2020 (assuming onset of pain the day of vaccination). *See, e.g., Herren v. Sec'y of Health & Hum. Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Hum. Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record establishes that Petitioner's initial treatment occurred over approximately five months, ending February 25, 2020. This is roughly three weeks shy of six months post-vaccination. On February 5th, however, she reported moderate to severe pain (five out of ten) and slow progress in healing. Further, on February 25, 2020, she continued to report "a lot of pain" in her shoulder. Ex. 5 at 13. Given her slow rate or progress, and reports of significant pain as late as February of 2020, it is more likely than not that her pain continued through at least March 17, 2020.

Respondent observes that Petitioner did not seek treatment for her shoulder after February 25, and that when she did seek in-person treatment in the fall of 2020 with Dr.

Tran, no mention of her shoulder injury was made. Opp. at 8. However, the affidavits of her and her husband explain that COVID-19 Pandemic restrictions halted her treatment. Ex. 11, 12. This is a reasonable explanation for why treatment visits may have ceased for at least some of this time. Further, Petitioner contends that she reported shoulder issues to Dr. Tran in the fall of 2020, but which were unreported in the medical record. Ex. 11. Adding weight to her argument is the fact that she received a flu vaccination on October 1, 2020 in her *right* arm, instead of her left. Ex. 10 at 11.

Thus, the overall record constitutes a sufficient showing of severity (if just barely) to meet the preponderance evidentiary standard. It is likely that Petitioner's symptoms persisted into March of 2020, despite the cessation of treatment and subsequent gap However, the light history of treatment also suggests a mild injury - which will impact damages in this case, as noted below.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion, and I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported left shoulder pain to Dr. Van Dyke on November 14, 2019. Ex. 4 at 9-10. While Petitioner delayed nearly two months in seeking treatment, she consistently and continually linked her shoulder pain temporally to the date of vaccination. *See* Ex. 4 at 9 (record from November 14, 2019 stating that her shoulder pain was present for two months "ever since she got the flu shot"); Ex. 5 at 6 (record from January 8, 2020 stating she had a flu shot and "has since had pain in her L[eft] shoulder").

Respondent argues that Petitioner's statements are vague and fail to identify a specific onset date for his shoulder symptoms. Opp. at 12. Even so, a finding of Table-

consistent onset can be made based on such a record. Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner consistently linked her shoulder pain to the September flu vaccine – whereas there are no records suggesting an onset outside of 48-hours post-vaccination.

Further, while Petitioner did delay nearly two months before seeking treatment, the relevant medical records show that she did not attribute her pain to any other injury or cause. In fact, it is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after.

### 3. Range of Motion Limits Evidence

A Table SIRVA injury *does* require that a petitioner establish limited or reduced range of motion. *Bolick v. Sec'y of Health & Hum. Servs.*, No. 20-893V, 2023 WL 8187307, at *6 (Fed. Cl. Oct. 19, 2023). Respondent also argues that Petitioner did not exhibit reduced range of motion, and thus cannot meet this requirement. Opp. at 13. Respondent cites to records that do not affirmatively report reduced range of motion, and more specifically to Dr. Van Dyke's records that stated Petitioner had a "good" range of motion. Ex. 4 at 9-10.

Here, although Dr. Van Dyke did not note range of motion limitations, other records do. For example, Petitioner's MRI affirmatively states a history of limited range of motion. Ex. 8 at 18. Further, the chiropractic records note muscle inhibition and adhesion. Ex. 5 at 6.  While Respondent has a valid point, when the record is viewed in its entirety, there is preponderant evidence that establishes Petitioner experienced reduced range of motion in her left shoulder.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 4. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 5. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on September 17, 2019, in the United States. Ex. 1 at 8; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner collected a civil award for her injury. Ex. 2; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## IV. Damages

The parties also briefed damages in this matter. Petitioner is seeking $68,000.00 for pain and suffering. Mot. at 13-14, Reply at 4-5. Respondent argues that if entitlement is found in favor of Petitioner, an award of $37,500.00 is an appropriate amount for pain and suffering. Opp. at 19.

### A. Legal Standards for Damages Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within the SPU. I fully adopt and hereby incorporate my prior discussion in Sections III and IV of *Leslie v. Sec'y Health & Hum. Servs.*, No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) and *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021), as well as Sections II and III of *Tjaden v. Sec'y of Health & Hum. Servs.,* No. 19-419V, 2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021)*.*

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

### B. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including all medical records, affidavits, plus all filings submitted by both Petitioner and Respondent. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Mrs. McGraw asserts that the severity of her injury is most similar to what the petitioner experienced in *Russo v. Sec'y of Health & Hum. Servs.*, No. 20-1491V (Fed. Cl. Spec. Mstr. August 31, 2022) (awarding $63,000.00 for pain and suffering); *Knauss v. Sec'y of Health & Hum. Servs.*, No. 16-137V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for pain and suffering); and *Dagen v. Sec'y of Health & Hum. Servs.*, No. 18-0442V, 2018 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2018) (awarding $65,000.00 for pain and suffering). In particular, she emphasizes that she underwent an MRI, numerous chiropractic appointments, and five Traumeel injections over five months. Mot. at 13. Further, she would have continued treating but for the COVID 19 Pandemic. *Id.*

Respondent, by contrast, submits that the lesser award of $37,500.00 is appropriate. Opp. at 15-18-14. Respondent argues that Petitioner's injury was mild, short-lived, and required very little treatment. Opp. at 16-17. Respondent cites to three conceded cases wherein Petitioner was awarded between $25,000.00 and $40,000.00 for a SIRVA. *Siefker v. Sec'y of Health & Hum. Servs.*, No. 19-951V, 2021 WL 2433299

---

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

(Fed. Cl. Spec. Mstr. May 14, 2021) (pain and suffering proffer of $25,000.00); *Hutchens v. Sec'y of Health & Hum. Servs.*, No. 17-797V, 2022 WL 782313 (Fed. Cl. Spec. Mstr. Feb. 28, 2022) (pain and suffering proffer of $32,500.00); *Tell v. Sec'y of Health & Hum. Servs.*, No. 19-1057V, 2021 WL 829515 (Fed. Cl. Spec. Mstr. Jan. 19, 2021) (pain and suffering proffer of $40,000.00).

Based on the medical records, I conclude that Mrs. McGraw suffered a mild SIRVA for approximately six months. She sought treatment two months after her vaccination, and her pain was mostly reported as moderate (five to seven out of ten). However, her course of treatment was very conservative, consisting of x-rays, an MRI, chiropractic sessions, Traumeel injections, and orthopedic visits. Further, the diagnostic testing revealed a mild injury: Petitioner's MRI showed only tendinosis a likely mild bursitis.

The overall severity of the injury at issue herein is thus not high enough to justify the $68,000.00 requested by Petitioner. I note that the SIRVA cases cited by Petitioner otherwise involved more extensive treatment over longer periods. For example, in *Russo*, petitioner underwent twelve physical therapy sessions, had two iontophoresis treatments over eight months. 2022 WL 4717927 at *4. The petitioner in *Knauss* treated for over a year, and had two MRIs, one cortisone injection, and fourteen physical therapy sessions. 2018 WL 3432906 at *7. However, I also agree with Petitioner that proffered cases, such as those cited by Respondent, do not provide reasoned analyses supporting their awards, rendering them of little use in determining the appropriate pain and suffering amount to be awarded. Reply at 4-5.

Nevertheless, Respondent's valuation of this case better fits the extent of Petitioner's pain and suffering, given what the medical records show. In fact, it is more in line with other SIRVA awards from reasoned decisions, in cases that involved mild SIRVA injuries with limited conservative treatment, no cortisone injections or surgery, few physical therapy sessions, and treatment gaps or delays. *See, e.g., Mejias v. Sec'y of Health & Hum. Servs.*, No. 19-1944V, 2021 WL 5895622 (Fed. Cl. Spec. Mstr. Nov. 10, 2021) (awarding $45,000.00 for pain and suffering) and *Ramos v. Sec'y of Health & Hum. Servs.*, No. 18-1005V, 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021) (awarding $40,000.00 for pain and suffering).

In both *Mejias* and *Ramos*, the relevant petitioners treated for relatively short periods of time, reported mild or moderate pain levels, had moderate range of motion limitations, and little-to-no physical therapy. *Mejias,* 2021 WL 5895622 (treating for over ten months with no physical therapy and pain levels ranging from three to six out of ten); *Ramos,* 2021 WL 688576 (delayed seeking treatment for approximately four months, treated for thirteen months, had eleven physical therapy sessions, and reported pain

levels ranging from zero to ten out of ten). In fact, both cases involved longer treatment and moderate limitations on range of motion, unlike Mrs. McGraw – suggesting even these amounts are too high.

Overall, this SIRVA was barely severe enough to cross the six month "line," and did not involve surgery or other considerations that would render it a case in which a large award is appropriate. Taking all of the above into account, I find that $37,500.00 for pain and suffering is fair compensation.

## Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**For all the reasons discussed above, and based on consideration of the records as a whole, I award Petitioner $37,500.00 in damages for past pain and suffering.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court SHALL ENTER JUDGMENT in accordance with the terms of this Decision.[5]

**IT IS SO ORDERED.**

> s/Brian H. Corcoran
> Brian H. Corcoran
> Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.